UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| IMS HEALTH INCORPORATED;<br>VERISPAN, LLC; and SOURCE<br>HEALTHCARE ANALYTICS, INC.,<br>a subsidiary of WOLTERS KLUWER,<br>HEALTH INC., | :<br>:<br>:<br>:<br>:<br>: |
| Plaintiffs,<br>v. | : File No. 1:07-CV-188<br>: (Lead Case)<br>: |
| WILLIAM H. SORRELL, as Attorney<br>General of the State of Vermont, | :<br>: |
| Defendant. | :<br>: |
| _____ | :<br>: |
| PHARMACEUTICAL RESEARCH AND<br>MANUFACTURERS OF AMERICA, | :<br>:<br>: |
| Plaintiff,<br>v. | : File No. 1:07-CV-220<br>: (Member Case)<br>: |
| WILLIAM H. SORRELL, in his<br>official capacity as Attorney<br>General of the State of Vermont;<br>JIM DOUGLAS, in his official<br>capacity as Governor of the State<br>of Vermont; and CYNTHIA D. LAWARE,<br>in her official capacity as the<br>Secretary of the Agency of Human<br>Services of the State of Vermont, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | :<br>: |
| _____ | : |

RULING ON DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT AGAINST PhRMA
(Paper 82)

I.    Introduction

       This case rounds out a trilogy of recent challenges to

legislation in New Hampshire, Maine, and Vermont aimed at the

collection of data identifying prescribing patterns of health

care providers and the use of this data by pharmaceutical companies for marketing purposes, specifically targeting the constitutionality of Vt. Acts No. 80 (2007), amended as Vt. Acts No. 89 (2008) ("the Act").  While many important issues loom on the horizon in this case, this ruling addresses the only remaining question raised by Paper 82[1] - whether the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, deprives the Court of subject matter jurisdiction to hear Plaintiff Pharmaceutical Research and Manufacturers of America's ("PhRMA") challenge to the Manufacturer Fee established in section 20 of the Act, 33 V.S.A. § 2004 (Count 3 of PhRMA's amended complaint).[2]  For the following reasons, the Court finds the TIA does not impose a jurisdictional barricade and that portion of Defendants' motion for partial summary judgment (Paper 82) is denied.

---

[1]The other bases for partial summary judgment raised in Paper 82 were denied as moot by the Court on April 29, 2008. Also, despite that Paper 82's jurisdictional challenge was originally levied against PhRMA's initial complaint, it applies with equal force to the complaint as amended.

[2]As everyone close to this case is painfully aware, the parties have recently inundated the Court with hundreds of pages of factual narrative and legal argument in the form of four summary judgment motions and a discovery motion involving allegations of destroyed evidence.  Full briefing on the latest of these motions will not be complete until mid-July.  With the bench trial's start date of July 28, 2008 fast approaching and a number of other equally important cases vying for attention, the parties should expect that in all likelihood, the Court will defer ruling on the substantive motions until after the bench trial.

II.  <u>Background</u>

PhRMA is a non-profit corporation serving as policy advocate for its members, who are research-based pharmaceutical and biotechnology companies.  (Paper 221 at 5).  PhRMA's members are subject to the provisions of the Act.  Under section 20 of the Act, pharmaceutical manufacturers will be assessed a charge, to be paid to the agency of human services.  <u>See</u> 33 V.S.A. § 2004(a).  The charge is to be calculated as a percentage (0.5%) of the office's spending on that manufacturer's products under Medicaid and certain other programs during the previous calendar year.  <u>Id.</u>

The Office of Vermont Health Access ("OVHA") will administer the fee by invoicing manufacturers, collecting the fee, and then depositing it into a special fund entitled the "Evidence-based education and advertising fund," also created within the Act. (Paper 109-2 at 7); <u>see</u> <u>also</u> 33 V.S.A. § 2004a.  The fee will not be commingled with general revenues or available for general revenue purposes.  (Paper 109 at 13).

Once collected, the funds may be used for the following purposes: (1) collection and analysis of information on pharmaceutical marketing activities under §§ 4632 and 4633 of Title 18, (2) analysis of prescription drug data needed by the attorney general's office for enforcement activities, and (3) the

evidence-based education program established in subchapter 2 of chapter 91 of Title 18.  See 33 V.S.A. § 2004(b).

Section 4632 of Title 18 requires pharmaceutical manufacturing companies to disclose annually to the office of the attorney general the value, nature, and purpose of any economic benefit (unless exempted within the statute), provided in connection with marketing activities to any person in Vermont authorized to prescribe, dispense, or purchase prescription drugs in Vermont.  See 18 V.S.A. §§ 4632(a)(1) and (4).  The companies must also disclose the name of the recipient and the name and address of the person responsible for the company's compliance. Id. at §§ 4632(a)(1) and (2).  Section 4633 of Title 18 mandates any pharmaceutical marketer who markets a prescription drug directly to someone authorized to prescribe prescription drugs to disclose the average wholesale price ("AWP") of the drug being marketed, including "the AWP per pill and the price relationship between the drug being marketed and other drugs within the same therapeutic class."  18 V.S.A. § 4633(a).

The evidenced-based education program is designed to "provide information and education on the therapeutic and cost-effective utilization of prescription drugs to physicians, pharmacists, and other health care professionals authorized to prescribe and dispense prescription drugs," and to "notify prescribers about commonly used brand-name drugs for which the

4

patent has expired within the last 12 months or will expire

within the next 12 months."  18 V.S.A. §§ 4622(a)(1) and (2).

The program may also distribute vouchers to prescribers for

samples of generic drugs.  18 V.S.A. § 4622(a)(3).

In addition to these main statutorily designated purposes,

OVHA will use the funds to implement other provisions of the Act,

including: establishing a Joint Pharmaceutical Purchasing

Consortium, collecting drug pricing information, negotiating

rebates for the Healthy Vermonters Program, notifying

beneficiaries of changes to the Preferred Drug List, establishing

and reporting on a generic drug voucher pilot program, and

collecting the fee from pharmaceutical manufacturers.  See Paper

109-3 at 2, 3.

III. Standard of Review

As an initial matter, PhRMA asserts that the jurisdictional

challenge raised under the guise of a partial summary judgment

motion should be construed as a motion to dismiss under Fed. R.

Civ. P. 12(b)(1).  (Paper 109 at 11 n.5).  Absent objection from

Defendants, (Paper 127 at 3 n.1), the Court agrees.  See, e.g.,

Moses v. Air Afrique, 2000 WL 306853, at *2 (E.D.N.Y. Mar. 21,

2000) (construing motion for summary judgment for lack of subject

matter jurisdiction as motion to dismiss under Rule 12(b)(1)).

"A case is properly dismissed for lack of subject matter

jurisdiction under Rule 12(b)(1) when the district court lacks

the statutory or constitutional power to adjudicate it."

Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  In

resolving such a motion, "the court must take all facts alleged

in the complaint as true and draw all reasonable inferences in

favor of plaintiff."  Natural Res. Def. Council v. Johnson, 461

F.3d 164, 171 (2d Cir. 2006) (quoting Sweet v. Sheahan, 235 F.3d

80, 83 (2d Cir. 2000)).  The Court may consider evidence outside

the pleadings.  Makarova, 201 F.3d at 113 (citing Kamen v.

American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

The party asserting subject matter jurisdiction "has the burden

of proving by a preponderance of the evidence that it exists."

Makarova, 201 F.3d at 113.

IV.  Analysis

    The Court now turns to the question at hand - whether the

TIA deprives the Court of subject matter jurisdiction to hear

PhRMA's challenge to the Manufacturer Fee.  At this point, to

avoid nomenclative confusion, and because the Legislature's

chosen moniker is not dispositive of the issue, see Collins

Holding Corp. v. Jasper County, S.C., 123 F.3d 797, 800 n.3 (4th

Cir. 1997), the Manufacturer Fee will be referred to as the

"charge."

    Congress passed the TIA in 1937 out of a "concern to confine

federal court intervention in state government."  Arkansas v.

Farm Credit Servs. of Cent. Arkansas, 520 U.S. 821, 826-27

(1997).  The TIA provides:  "The district courts shall not

enjoin, suspend or restrain the assessment, levy or collection of

any tax under State law where a plain, speedy and efficient

remedy may be had in the courts of such State."  28 U.S.C. §

1341.  Because there is no dispute over the adequacy of a state

remedy, the Court's inquiry is distilled to whether under federal

law the charge is a "tax" or merely a regulatory "fee."  Kraebel

v. New York City Dep't of Hous. Pres. & Dev., 959 F.2d 395, 400

(2d Cir. 1992).

    In distinguishing between taxes and fees, a leading case

announced the following oft-cited framework:

> [Courts] have sketched a spectrum with a paradigmatic
> tax at one end and a paradigmatic fee at the other.
> The classic 'tax' is imposed by a legislature upon
> many, or all, citizens.  It raises money, contributed
> to a general fund, and spent for the benefit of the
> entire community.  The classic 'regulatory fee' is
> imposed by an agency upon those subject to its
> regulation.  It may serve regulatory purposes directly
> by, for example, deliberately discouraging particular
> conduct by making it more expensive.  Or it may serve
> such purposes indirectly by, for example, raising money
> placed in a special fund to help defray the agency's
> regulation-related expenses.

San Juan Cellular Tel. Co. v. Public Serv. Comm'n, 967 F.2d 683,

685 (1st Cir. 1992) (citations omitted).  To aid the tax/fee

analysis, San Juan calls for consideration of three factors: (1)

what entity imposes the charge; (2) what population is subject to

the charge; and (3) whether the charge is expended for general

public purposes, or used for the regulation or benefit of those

upon whom the assessment is imposed.  Id.  Not surprisingly,

black and white cases falling at the outer poles of the spectrum

are rare, with the majority of cases falling instead "into the

gray area in the center of the spectrum."  Cumberland Farms, Inc.

v. Tax Assessor, 116 F.3d 943, 947 (1st Cir. 1997).  When courts

find themselves in this gray area, they tend to add color by

emphasizing "the revenue's ultimate use, asking whether it

provides a general benefit to the public, of a sort often

financed by a general tax, or whether it provides more narrow

benefits to regulated companies or defrays the agency's costs of

regulation."  Travelers Ins. Co. v. Cuomo, 14 F.3d 708, 713 (2d

Cir. 1993) (quoting San Juan, 967 F.2d at 685), rev'd on other

grounds sub nom by N.Y. State Conf. of Blue Cross & Blue Shield

Plans v. Travelers Ins. Co., 514 U.S. 645 (1995); see also

Collins, 123 F.3d at 800 ("the heart of the inquiry centers on

function, requiring an analysis of the purpose and ultimate use

of the assessment").

    Applying the San Juan factors and emphasizing the revenue's

ultimate use, the Court concludes the charge roosts on the fee

side of the spectrum.  For one, although created by the

legislature, the charge is administered and collected by OVHA, a

regulatory agency, as opposed to the general taxing authority.

See Collins, 123 F.3d at 800 ("If responsibility for

administering and collecting the assessment lies with the general

tax assessor, it is more likely to be a tax; if this responsibility lies with a regulatory agency, it is more likely to be a fee."). The revenue from the charge is deposited into a special fund where it is not commingled with general revenue nor available for general revenue purposes. See <u>Bidart Bros. v. Cal. Apple Comm'n</u>, 73 F.3d 925, 932 (9th Cir. 1996) ("An assessment placed in a special fund and used only for special purposes is less likely to be a tax."). The charge is only imposed on a narrow class of pharmaceutical manufacturers, a far cry from the classic tax that is levied on many, or all, citizens. See <u>id.</u> at 931 ("An assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class."). Finally, despite that the revenue from the charge may provide indirect benefits to the public, primarily through the evidence-based education program, it remains that § 2004(b) clearly earmarks a significant portion of the charge to defray the costs of regulation. See <u>San Juan</u>, 967 F.2d at 685 (finding three percent charge not a tax where revenue used to defray costs of public service commission). On balance, these characteristics weigh decidedly in favor of calling the charge a fee.

V.   <u>Conclusion</u>

For these reasons, the TIA does not present a jurisdictional bar to Count 3 of PhRMA's amended complaint and the remainder of

Defendants' motion for partial summary judgment, (Paper 82), is

DENIED.

SO ORDERED.

Dated at Brattleboro, Vermont, this 17th day of June, 2008.


/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge