| | |
|---|---|
| IMS HEALTH INCORPORATED; VERISPAN, LLC; and SOURCE HEALTHCARE ANALYTICS, INC., a subsidiary of WOLTERS KLUWER, HEALTH INC., | : <br> : <br> : <br> : <br> : <br> : |
| Plaintiffs, <br> v. | : File No. 1:07-CV-188 <br> : (Lead Case) <br> : |
| WILLIAM H. SORRELL, as Attorney General of the State of Vermont, | : <br> : <br> : |
| Defendant. | : <br> : |
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA, | : <br> : <br> : |
| Plaintiff, <br> v. | : File No. 1:07-CV-220 <br> : (Member Case) <br> : |
| WILLIAM H. SORRELL, in his official capacity as Attorney General of the State of Vermont; JIM DOUGLAS, in his official capacity as Governor of the State of Vermont; and CYNTHIA D. LAWARE, in her official capacity as the Secretary of the Agency of Human Services of the State of Vermont, | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : <br> : |

## RULING ON MOTION FOR INJUNCTION PENDING APPEAL
(Paper 433)

I.  Introduction

Plaintiffs IMS Health Inc., Verispan, LLC, and Source Healthcare Analytics, Inc. claim Section 17 of Vermont's Prescription Confidentiality Law, codified at Vt. Stat. Ann. tit 18, § 4631, is unconstitutional.  On April 24, 2009, this

1

Court entered Judgment (Paper 431) denying Plaintiffs' motions for declaratory and injunctive relief (Papers 6, 61) as well as for summary judgment (Paper 168). Plaintiffs have appealed that ruling and move for an injunction to enjoin enforcement of Section 17 pending appeal (Papers 433, 435). Defendants oppose their request (Paper 438).

## II.  Background

The Court assumes familiarity with the factual and procedural background of this case as detailed in this Court's April 23, 2009 Memorandum Opinion and Order (Paper 430).

## III. Analysis

In relevant part, Fed. R. Civ. P. 62(c), provides:  "While an appeal is pending from . . . [a] final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction during the pendency of the appeal."  The factors the Court must consider in deciding whether to grant an injunction are:  (1) likelihood of success on the merits; (2) irreparable harm to the movant absent an injunction; (3) possibility of substantial harm to other interested parties caused by an injunction; and, (4) the public interest.  N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health, 545 F. Supp. 2d 363, 365-66 (S.D.N.Y. 2008) (quoting In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007)).

Granting injunctive relief is an extraordinary remedy.
Silverstein v. Penguin Putnam, Inc., 368 F.3d 77, 84 (2d Cir.
2004).  The burden to demonstrate all four factors is on
Plaintiffs as the moving parties.  Their burden is high because
they seek an extraordinary remedy to prevent enforcement of a
statute this Court has previously upheld and is presumed valid.
See Brown v. Gilmore, 533 U.S. 1301, 1303 (Rehnquist, Circuit
Justice 2001) (refusing to issue an injunction pending certiorari
where applicants sought injunction against enforcement of a
"presumptively valid state statute.").  The decision to grant an
injunction pending appeal is in the Court's discretion.  Fed. R.
Civ. P. 62(c); Conn. Hosp. Ass'n v. O'Neill, 863 F. Supp. 59, 61
(D. Conn. 1994).

A.    Irreparable Harm

Plaintiffs point to the Elrod v. Burns line of authority for
the proposition that the loss of First Amendment rights, for even
a short time, constitutes irreparable injury.  427 U.S. 347, 373
(1976); see also Tunick v. Safir, 209 F.3d 67, 87 (2d Cir. 2000)
(applying Elrod presumption in reviewing grant of preliminary
injunction).  The Court finds persuasive Defendants' argument
distinguishing that authority.  In the cases Plaintiffs cite, the
courts were dealing with a preliminary injunction application
instead of an injunction pending appeal after a final decision on
the merits.  See Nat'l Ass'n of Mfrs. v. Taylor, 549 F. Supp. 2d

68, 76 (D.D.C. 2008); <u>see also</u> <u>Hsu v. Roslyn Union Free Sch.</u>
<u>Dist.</u>, 85 F.3d 839, 853 (2d Cir. 1996) (noting irreparable harm
inquiry depends on merits of claim(s)). Here, in contrast, the
Court has thoroughly considered and rejected the merits of
Plaintiffs' claim that Section 17 impermissibly burdens First
Amendment rights, including the possibility of harm to
Plaintiffs' rights.  The attempt to resuscitate the same
arguments in support of their motion for an injunction pending
appeal is unavailing.

Further, the irreparable harm analysis in this case is
distinct from other First Amendment cases because the issues are
different.  Section 17 does not compel speech.  <u>See, e.g.</u>, <u>Int'l</u>
<u>Dairy Foods Ass'n v. Amestoy</u>, 92 F.3d 67, 72 (2d Cir. 1996)
(holding statute caused irreparable harm by compelling
manufacturers' speech).  Also, it does not restrict speech on a
matter of public concern.  <u>IMS Health Inc. v. Ayotte</u>, 550 F.3d
42, 100 (1st Cir. 2008) (noting New Hampshire's similar law
"restricts only private communications . . . rather than a
message disseminated to the public at large") (Lipez, J.,
concurring).  Rather, this Court specifically found the data
restricted by Section 17 is used to "covertly influence[]"
prescribers.  (Paper 430 at 31-32.)  Most importantly, Section 17
does not prevent the disclosure of all restricted data for all

purposes; it prevents only the use of restricted data for marketing purposes.

The Court also is unpersuaded by Plaintiffs' claim of harm flowing from the cost of compliance. As Defendants point out, Plaintiffs have previously complied with this law and a similar law in New Hampshire. Though it may not be as easy as "flipping a switch," (Paper 433 at 6), duplicating a system should not be as costly as creating it in the first instance. <u>See, e.g.</u>, Paper 433 at 7 (noting Source Healthcare was compliant when Section 17 was effective in 2008 and subsequently "undid" the work when the effective date was changed). Plaintiffs also argue this expended money constitutes irreparable harm because, under the Eleventh Amendment, the government is immune from damage suits and the expenses cannot be recouped. Spending money to comply with the law is simply a fact of doing business. <u>See Pennsy Supply, Inc. v. Susquehanna River Basin Comm'n</u>, No. 1:CV-06-2454, 2007 WL 551573, at *3 (M.D. Pa. Feb. 20, 2007) (plaintiff corporation's costs to comply with a government regulation did not constitute irreparable harm).

For these reasons, the Court rejects Plaintiffs' claims of irreparable harm and finds this factor weighs in favor of denying an injunction pending appeal.

B.  Likelihood of Success on the Merits

The parties dispute the degree to which Plaintiffs must demonstrate their likelihood of success.  Plaintiffs, citing LaRouche v. Kezer, 20 F.3d 68, 72 (2d Cir. 1994), argue the correct standard is a "substantial possibility, although less than a likelihood, of success."  Defendants rely on a recent Supreme Court case, Nken v. Holder, 129 S. Ct. 1749, 1761 (2009), to argue the correct standard is "a strong showing that [movant] is likely to succeed."  The Nken Court cites Hilton v. Braunskill, 481 U.S. 770, a 1983 Supreme Court decision discussing Rule 62(c) which states the required standard is "a strong showing that [movant] is likely to succeed on the merits."  Id. at 776.  As the "strong showing" standard has been applied by the Supreme Court since at least 1983 and reaffirmed as recently as this year, the Court will apply the "strong showing" standard.[1]  It is also the standard endorsed by this Circuit in In re World Trade Center just two years ago.  503 F.3d at 170; see also N.Y. State Rest. Ass'n, 545 F. Supp. 2d at 365-66 (quoting World Trade Center and applying the "strong showing" standard in denying an injunction pending appeal in a case which included a First Amendment challenge).

---

[1]    The Court notes the authority LaRouche relied upon for a lower standard, Hirschfeld v. Bd. of Elections, 984 F.2d 35, 39 (2d Cir. 1993), itself relied upon Hilton.

In any event, the dispute about the proper standard to apply in evaluating Plaintiffs' showing of likelihood of success on the merits is largely semantic. The "strong showing" of likelihood of success on appeal "will vary according to the court's assessment of the other [stay] factors. . . . Simply stated, more of one excuses less of the other." Mohammed v. Reno, 309 F.3d 95, 101 (2d Cir. 2002) (internal quotations and citations omitted) (discussing various formulations used to describe the degree of likelihood of success required).

To prevail on appeal, Plaintiffs must persuade the Second Circuit not only that this Court erred in upholding Section 17, but also that the First Circuit Court of Appeals -- which is the only appeals court to consider a similar law -- was mistaken in concluding New Hampshire's statute is constitutional. See Ayotte, 550 F.3d at 60, 102. Plaintiffs' pending motion presents no new authority to undermine this Court's prior holdings. Instead, they rehash arguments the Court has previously rejected. See Nat'l Ass'n of Mfrs., 549 F. Supp. 2d at 75 ("mere repetition of [plaintiff's] arguments does not demonstrate [plaintiff] is any more likely to succeed on the merits of its claims than it was when the Court issued its Memorandum Opinion").

For the above reasons, and because the other factors weigh in favor of denying an injunction pending appeal, the Court finds

Plaintiffs have not demonstrated a sufficiently strong showing of likelihood of success on appeal.

    C.   <u>Other Factors</u>

Defendants cogently argue an injunction against implementation of Section 17 would harm the State of Vermont and the public interest because it would delay enforcement of a law intended by the Legislature -- and found by this Court -- to protect the health of Vermonters and contain health care costs. See <u>Nken</u>, 129 S. Ct. at 1757 ("The parties and the public . . . are [] generally entitled to the prompt execution of orders that the legislature has made final."). Granting the injunction would result in an inordinate delay in implementing the law at the expense of Vermont and its citizens.

Further, the Court declines to issue an injunction to prevent a law from going into effect that has been found to protect public health. Harm to the health of a member of the public outweighs financial harm Plaintiffs claim they will suffer from enforcement of the law. <u>See, e.g.</u>, <u>Drywall Tapers & Pointers of Greater N.Y. Local 1974 v. Local 530 of Operative Plasters' & Cement Masons' Int'l Ass'n</u>, No. 93-CV-0154, 98-CV-7076, 2005 WL 638006, at *12 (E.D.N.Y. Mar. 17, 2005)(refusing to suspend an injunction pending appeal even though defendant's business could fail). The Court is unmoved by the possibility Plaintiffs may not profit as much from the data regulated by

Section 17.  See Hodges v. Shalala, 127 F. Supp. 2d 790, 793 (D.S.C. 2001) (denying injunction pending appeal where it "would effectively [provide] a grace period [to] continue to collect undeserved monies while exhausting [] legal arguments and remedies.").

For these reasons, the Court finds the balance of harms and public interest factors weigh in favor of denying an injunction pending appeal.

IV. <u>Conclusion</u>

For the reasons expressed herein, the Court finds Plaintiffs have not satisfied the requirements for an injunction pending appeal under Fed. R. Civ. P. 62(c).  Plaintiffs' Motion for Injunction Pending Appeal (Paper 433) is DENIED.

SO ORDERED.

Dated at Brattleboro, Vermont, this 5th day of June, 2009.

/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge