UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| IMS HEALTH INCORPORATED, VERISPAN LLC, and SOURCE HEALTHCARE ANALYTICS, INC., a subsidiary of WOLTERS KLUWER, HEALTH INC., | : : : : : : | |
| Plaintiffs, | : | File No. 1:07-cv-188-jgm |
| vs. | : : : | |
| WILLIAM H. SORRELL, as Attorney General of the State of Vermont, | : : : | |
| Defendant. | : : | |

MEMORANDUM OPINION AND ORDER
(Docs. 465, 474)

I.   Introduction

Now pending are Plaintiffs' Motion and Supplemental Motion for Award of Attorney's Fees, Expenses and Costs under 42 U.S.C. § 1988, 28 U.S.C. § 1920, and Federal Rule of Civil Procedure 54(d).  (Docs. 465, 474.)  IMS Health Incorporated, Verispan LLC, and Source Healthcare Analytics, Inc. (collectively, "Plaintiffs") request an award of $3,923,275.00 in attorneys' fees, $177,269.81 in other expenses, and $104,522.48 in costs, for a total award of $4,205,067.26.[1]  (Docs. 465, 474.)  Defendants oppose the motions.  (Doc. 469, 477.)  For the following reasons, the motions are granted in part and denied in part in that the Court awards Plaintiffs $2,137,050 in attorneys' fees, $106,989.63 in other expenses, and declines to award costs at this time.

---

[1] Plaintiffs request attorneys' fees of $3,696,640.00 in their original motion and $226,635.00 in their supplemental motion.  (Docs. 465, 474.)  The supplemental motion does not request additional expenses or costs.

II.  Discussion[2]

    A.  Attorneys' Fees

        1.  Original Motion

42 U.S.C. § 1988(b) provides "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." Under the statute, district courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). Plaintiffs, as the fee applicants, "bear[] the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). Defendants do not dispute that Plaintiffs are prevailing parties. See Doc. 469. Plaintiffs succeeded in obtaining a favorable ruling from the Supreme Court regarding the constitutionality of the Vermont laws they challenged. See Sorrell v. IMS Health Inc., 131 S. Ct. 2653 (2011). Accordingly, Plaintiffs "cross[ed] the threshold to a fee award of some kind." See Lyte v. Sara Lee Corp., 950 F.2d 101, 103 (2d Cir. 1991) (quoting Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791-92 (1989)). That fee award, however, is limited to a reasonable fee.

A "'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." Perdue v. Kenny A., 130 S. Ct. 1662, 1672 (2010). In the Second Circuit, attorney's fees are awarded by determining a "presumptively reasonable fee," which is calculated by multiplying a reasonable hourly rate by the number of reasonably expended

---

[2] Familiarity with the various opinions and rulings made during the course of this litigation is assumed. See, e.g., Sorrell v. IMS Health Inc., 131 S. Ct. 2653 (2011); IMS Health Inc. v. Sorrell, 630 F.3d 263 (2d Cir. 2010); IMS Health Inc. v. Sorrell, 631 F. Supp. 2d 434 (D. Vt. 2009). Only the facts relevant to this motion will be discussed when appropriate.

2

hours.  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 183-84 (2d Cir. 2008).

        a.       <u>Reasonable Hourly Rate</u>

A reasonable hourly rate is "what a reasonable, paying client would be willing to pay," and a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively. <u>Id.</u> at 184, 190.  The Court of Appeals has instructed that, in determining this rate, the district court should consider factors including, but not limited to:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

<u>Id.</u>  Accordingly, in determining a reasonable fee, district courts are instructed to "bear in mind all of the of the case-specific variables . . . identified as relevant to the reasonableness of attorney's fees."  <u>Simmons v. N.Y. City Transit Authority</u>, 575 F.3d 170, 174 (2d Cir. 2009) (quoting <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 493 F.3d 110, 117 (2d Cir. 2007)).

The presumption remains "that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally."  <u>Arbor Hill</u>, 522 F.3d at 191.  To receive a fee award based on higher out-of-district rates, a litigant must "persuasively establish[] that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result."  <u>Simmons</u>, 575 F.3d at 172.

3

Plaintiffs assert they reasonably hired out of state attorneys because "no Vermont law firm [] had the resources to handle litigation of this magnitude." (Doc. 466 at 17.) In addition, they had already hired counsel to represent them in essentially the same litigation concerning similar laws in New Hampshire and Maine. See IMS Health Inc. v. Ayotte, 490 F. Supp. 2d 163 (D.N.H. 2007), rev'd, 550 F.3d 42 (1st Cir. 2008), cert. denied, 129 S. Ct. 2864 (2009); IMS Health, Inc. v. Rowe, 532 F. Supp. 2d 153 (D. Me. 2007), rev'd, 616 F.3d 7 (1st Cir. 2010), vacated sub nom. IMS Health, Inc. v. Schneider, 131 S. Ct. 3091 (2011). IMS Health Inc. asserts it "reasonably sought to leverage the knowledge that a firm would acquire by litigating in one state, thereby reducing the cost of litigating in multiple states." (Doc. 466 at 17.) They chose Hunton & Williams because that firm "had successfully tried the New Hampshire case to judgment only two months earlier, [and] had developed the institutional knowledge of both the core facts and the relevant legal issues." Id. Attorney Mark Ash represented Verispan LLC in the New Hampshire litigation and remained its counsel in Vermont. Id. at 4. Partners from Gravel & Shea were hired as lead Vermont counsel. Id.

Defendants assert Vermont counsel could have handled the case. See Doc. 469. In support of this position, Defendants offer the expert opinion of Attorney Richard Cassidy. (Doc. 469-3). Mr. Cassidy opines Vermont counsel could have, and at least one Vermont attorney and firm -- Mr. Peter Langrock of Langrock Sperry & Wool, LLP -- was willing to handle the case. Id. at 14-15. Accordingly, Defendants posit Plaintiffs' attorneys should receive the reasonable hourly rate of attorneys in the District of Vermont. Mr. Cassidy avers the prevailing market hourly rates in the District of Vermont range from $165 an hour for inexperienced attorneys to $225 for attorneys with twenty or more years experience. See Doc. 469-3 at 11-14.

The Court holds the presumption in favor of the forum rule is overcome in this case. Specifically, the Court considers counsel's expertise in litigating this case -- particularly because

4

they had just successfully litigated the same issues in New Hampshire and were also representing Plaintiffs in similar litigation in Maine.  Mr. Cassidy opines two Vermont firms may have been capable of handling this First Amendment litigation.  (Doc. 469-3 at 15.)  Those firms, however, did not possess the special expertise that Plaintiffs' counsel gained in litigating Ayotte in New Hampshire.  See Simmons, 575 F.3d at 176 (noting a party may make the requisite particularized showing that out-of-district counsel was necessary by establishing no in-district counsel possessed such expertise).  Accordingly, the Court concludes a reasonable paying client would have continued using the same counsel that had just secured them a victory in a very similar case.

      The average hourly rates requested by Plaintiffs' out-of-state attorneys are as follows: Thomas Julin, Partner, $670.66; Patricia Acosta, Senior Associate, $404.16; Michelle Milberg, Associate, $260.87; Jamie Isani, Senior Associate, $422.06; Jennifer Kennedy, Associate, $239.06; Thomas Goldstein, Partner, $850.65; Mark Ash, Partner, $361.18.  (Ex. 1 to Julin Decl. at 1 (Doc. 466-1 at 69.).)  Several other out-of-state attorneys worked on the case, but none more than fifty hours.  Id.  The top two paralegals' hourly rates requested are $180 and $197.73.  Id.  The top litigation support hourly rate requested is $213.18.  Id.

      The average hourly rates requested by Plaintiff's Vermont attorneys are as follows: Matthew Byrne, Partner, $293.58 and Robert Hemley, Partner, $320.10.  Id.  The hourly rate for the Vermont paralegal is $60.  Id.

      The average hourly rate requested for all timekeepers is $377.90.  Id.  Plaintiffs submitted support for their requested rates.  See, e.g., Doc. 466-9 (Decl. of Robert Hemley); Doc. 466-12 (Decl. of Bruce Keller); Doc. 466-13 (Decl. of John Sartore); Doc. 466-14 (Decl. of Richard Ovelmen).  The State did not address whether the requested hourly rates for out-of-state counsel are reasonable.

Plaintiffs acknowledge this Court regularly awards civil rights plaintiffs hourly rates of $225 for partners, $160-$180 for associates, and $85 for paralegals. Id. at 19. The Court notes an award of $300 per hour for an experienced partner was recently allowed in a civil rights case, though the partner worked only 3.25 hours on the case for a total award of $975, and the principal attorney on the case -- also a partner -- was compensated at $200 per hour. See Diamond v. O'Connor, No. 2:05-cv-279 (D. Vt. June 10, 2010), aff'd, 417 F. App'x 104 (2d Cir. 2011).

A client who can recover attorneys' fees through a fee shifting statute may have little incentive to negotiate rates prior to litigation. Accordingly, "the district court must act later to ensure that the attorney does not recoup fees that the market would not otherwise bear." Arbor Hill, 522 F.3d at 184. The district court "bears the burden of disciplining the market" and setting a "reasonable hourly rate" for the services of counsel. Id.; see also McDaniel v. County of Schenectady, 595 F.3d 411, 420 (2d Cir. 2010) (a presumptively reasonable fee represents an approximation of "what a competitive market would bear"). "[A] district court may use an out-of-district hourly rate-or some rate in between the out-of-district rate sought and the rates charged by local attorneys-in calculating the presumptively reasonable fee . . . ." Arbor Hill, 522 F.3d at 191.

In their original motion, Plaintiffs request hourly rates for partners between $290 and $850, associates $165 to over $400, and paralegals and other litigation support $65 to over $200, resulting in an attorney's fee award of $3,696,640. Generally, this Court has not awarded civil rights plaintiffs hourly rates higher than $225 for partners, $160-$180 for associates, and $85 for paralegals. See Docs. 466 at 19; 469 at 10-11.

Given the Court's holding regarding hiring out-of-district counsel, and bearing in mind all the case specific variables, the Court finds the average rate of $377.90 to be an unreasonable hourly rate, even for complex litigation of this type. The "touchstone" of the fee award doctrine is "that district courts should award fees just high enough to attract competent counsel." Simmons,

6

575 F.3d at 176 (citations omitted).  The Court is confident Plaintiffs could have found competent appellate counsel to argue this cutting edge First Amendment case to the Second Circuit who would have accepted less than $850 per hour.  For example, Attorney Julin, already exceedingly familiar with the facts and issues having litigated in three states and in the First Circuit, was capable of arguing the case before the appellate court.  Mr. Julin's average hourly rate for the entire litigation was $670.66.  Awarding associates hourly rates over $400 would be unconscionable in this litigation where Attorney Hemley, a competent Vermont partner with over forty years of experience, requests an average hourly rate of $320.  The average hourly rate of nearly $200 requested for Hunton & Williams' paralegals is also exorbitant.

  The Court is aware Plaintiffs paid an average hourly rate of approximately $378; however, "a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d 190.  In this case, the clients were profitable companies and have paid the fees requested by counsel.  However, Plaintiffs are entitled only to a "reasonable fee" sufficient to induce a capable attorney to undertake representation, Perdue, 130 S. Ct. at 1672; they are not entitled to the exact fee they paid.[3]  Accordingly, the Court, in its discretion, concludes a reduction in the average hourly rate[4] is necessary to discipline the market:  An average hourly rate of $300[5] -- a rate between the out-of-district rates requested and the rates charged by local attorneys -- is a reasonable hourly rate to use in calculating the presumptively reasonable fee.

---

[3] The Court notes the principle that courts award fees just high enough to attract competent counsel applies with special force to § 1988 cases because "the fees are paid in effect by state and local taxpayers" from a "limited budget[] . . . that cannot be used for programs that provide vital public services." Perdue, 130 S. Ct. at 1677.

[4] Because there are over thirty individual timekeepers included in this fee request, the Court declines to reduce each individual's hourly rate on a case by case basis and instead uses an across the board approach.

[5] An average hourly rate of $300 is approximately 20% less than the $377.90 requested.

b.      Number of Reasonably Expended Hours

Defendants argue the time spent on the case is unreasonable. See Doc. 469. In support of this position, they submit the expert opinion of Attorney Lawrence Robbins. (Doc. 469-4.) Mr. Robbins reviewed Plaintiffs' supporting documentation and specifically found over 2,600 hours he deems unreasonable and excessive. See Doc. 469-4 at 2-5. Defendants point to this evidence as support for their argument that Plaintiffs' claimed hours should be reduced by at least thirty percent. (Doc. 469 at 17.)

Considering that Plaintiffs' counsel had just litigated a very similar case in New Hampshire, the Court concludes a reduction in the claimed hours is necessary to arrive at a presumptively reasonable attorneys' fee that a reasonable paying client would be willing to pay. Given counsel's work on similar issues and litigation in New Hampshire and Maine, the Court would have expected to see greater realization of efficiencies. For example, though Plaintiffs were required to prosecute the case, the comparison of their expended hours to the State's -- which spent 2400 fewer hours (not including the approximately 2000 hours Plaintiffs voluntarily omitted) though it was litigating against two plaintiff groups and did not have the luxury of the earlier New Hampshire litigation -- is an indication Plaintiffs claimed hours are unreasonable.

Defendants also point out that in the New Hampshire case, Plaintiffs filed a fee application in which they sought a fee of approximately $1.3 million based on a total of 3,800 hours. (Doc. 469 at 11.) In that case, Judge Barbadoro declined to rule until the appeal was resolved but stated: "Upon preliminary review, it is apparent that the fee request is grossly excessive . . . ." Notice of Ruling, IMS Health Inc. v. Ayotte, Case No. 06-cv-280-PB (D.N.H. July 16, 2007). The Court is aware the New Hampshire case was resolved following expedited discovery and a four-day bench trial. See IMS Health Inc. v. Ayotte, 550 F.3d at 47-48.

Here, Plaintiffs seek compensation for almost 10,000 hours, including over 8,500 hours expended from the beginning of the litigation in June 2007 (two and a half months prior to filing the complaint) and the conclusion of the trial on August 2, 2008, a period of just over a year. See Doc. 466-3 at 92.  The Court specifically notes, in its view, over 1,000 hours to prepare the complaint and preliminary injunction motion in this litigation is an inordinate amount of time. Plaintiffs also request fees of over $100,000 for travel and many of the time entries reflect no work was being performed.  The convention in this District is to reduce by half time spent solely on travel.  Poulton v. Anesthesia Assocs. of Burlington, 87 F. Supp. 2d 351, 357 (D. Vt. 2000).

Plaintiffs also staffed the case with an inordinate number of attorneys, and other timekeepers, causing additional inefficiency.  See Doc. 466-1 at 69.  When a large number of attorneys work on a case, duplicative billing is often the result.  See Concrete Flotation Sys., Inc. v. Tadco Constr. Corp., No. 07-CV-319, 2010 WL 2539771, at *6 (E.D.N.Y. Mar. 15, 2010) (noting staffing litigation with a high number of attorneys ensures "unnecessary time" spent (1) for each attorney to become acquainted with facts and issues and (2) in communication with other attorneys on the matter).  Plaintiffs' choice to retain separate appellate counsel required yet more time for new counsel to familiarize themselves with the litigation.  Appellate counsel from Akin, Gump expended just over 200 hours, id.; Plaintiffs, however, request a fee award for over 1500 hours for the appeal.  (Doc. 466-3 at 92.)

Accordingly, the Court, in its discretion, reduces the claimed hours of 9,782 in the original motion by approximately 30% to 6,850.  See, e.g., Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010) (stating district courts are authorized "to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application") (internal quotation marks and citation omitted); Pasternak v. Baines, No. 00CV369, 2008 WL 2019812, at *8 (W.D.N.Y. May 8, 2008) ("In civil rights cases where lengthy fee applications are submitted, judges are not

9

expected to rule on the reasonableness of each entry."). The Court makes this determination cognizant of Plaintiffs' exclusion of approximately 2,000 hours from their fee application. See Doc. 470 at 7 (stating 2,155.90 hours were excluded); Doc. 466-1 (Julin Decl.) at 64 (stating 1,979.90 hours were excluded).

As determined above, a reasonable average hourly rate for this litigation is $300 and the total reasonably expended hours, excluding the hours requested in the supplemental motion, are 6,850. The Court holds $2,055,000 is a reasonable attorneys' fee sufficient to induce a capable attorney to undertake representation in this case. See Perdue, 130 S. Ct. at 1672.

2. Supplemental Motion

Plaintiffs also request fees for an additional 419.5 hours worked after June 23, 2011, in their Supplemental motion. (Docs. 474, 480 at 5.) This request includes 3.5 hours expended on remand-related work and 416 hours expended on fee recovery work for a total additional fee of $226,635.00. (Doc. 480 at 5.) In general, a fee award for time reasonably spent in preparing and defending a fee motion under § 1988 is available, and particularly should be awarded where the underlying fees were allowed. Weyant v. Okst, 198 F.3d 311, 316 (2d Cir. 1999). To determine reasonableness of the fee for preparing a fee motion, the Court undertakes the same method of determining the number of hours reasonably expended and multiplying the hours by a reasonable hourly rate.

a. Reasonable Hourly Rate

The Court will not repeat the applicable law discussed above, however, it bears reiterating a reasonable hourly rate is "what a reasonable, paying client would be willing to pay," and a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively. Arbor Hill, 522 F.3d at 184, 190. In their supplemental motion, Plaintiffs request hourly rates as follows: Thomas Julin, Partner, $725.00; Jamie Isani, Associate, $475.00; Patricia Acosta,

Associate, $475.00; Robert Hemley, Partner, $325.00; Matthew Byrne, Partner, $300.00. (Ex. 1 to Julin Supp. Decl. at 1 (Doc. 480-2 at 1).)

Defendants assert Plaintiffs have not supported the need for out of state counsel to have negotiated and prepared the fee request. (Doc. 477 at 2.) While the Court accepted Plaintiffs' argument regarding hiring out of state counsel to handle the bulk of the litigation, the Court is not persuaded the same counsel with expertise in healthcare and First Amendment law was necessary to take the lead in negotiating with the Vermont Attorney General regarding fees or in preparing the present motions. See Doc. 466-1 at 5-12. Plaintiffs' Vermont counsel are more than capable of handling a fee matter. In fact, Attorney Hemley is often an expert on fee matters in Vermont. See Doc. 466-9 at 7-10. Plaintiffs have not persuaded the Court a reasonable client would have chosen out of state counsel, with their much higher rates, or that doing so would result in a "substantially better net result" on this issue. Simmons, 575 F.3d at 172. Accordingly, the Court declines to award out of state rates for the 416 hours expended on fee recovery work.

The Court must determine a reasonable Vermont rate for this work performed after June 2011. As noted above, prior to Diamond v. O'Connor, No. 2:05-cv-279 (D. Vt. June 10, 2010), aff'd, 417 F. App'x 104 (2d Cir. 2011), this Court regularly awarded civil rights plaintiffs hourly rates of $225 for partners and $160-$180 for associates. In Diamond, an experienced partner was awarded $300 per hour and the more junior partner handling the bulk of the case was awarded $200 per hour. In this litigation, Plaintiffs paid their Vermont counsel hourly rates of $275-$325 for partners and $195-$225 for associates. (Doc. 466-9 at 6.) In light of Diamond, the actual rates paid, and the experience of the individual timekeepers, the Court determines $300 for an experienced partner and $200 for a senior associate[6] is reasonable for this work in this case.

---

[6] Hunton & Williams Associates Isani and Acosta graduated from law school in 2001 and 2002, respectively, resulting in experience justifying such compensation. (Doc. 480-2 at 1.)

b.        Number of Reasonably Expended Hours

Plaintiffs request fees for 419.5 hours in the supplemental motion. (Doc. 480-1 at 5-6.) Plaintiffs assert the number of hours is reasonable "in view of the volume of the work that was done [and] the complexity of the issues relating to the fee award in this case." Id. at 5. Plaintiffs also voluntarily excluded 100.9 hours from the request. (Doc. 480-2 at 3.) Defendants again argue the number of hours expended is unreasonable, with the exception of the 3.5 hours for remand related work. (Doc. 477 at 3.) In support of this position, they submit the supplemental expert report and declaration of Attorney Richard Cassidy who opines that the hours are unreasonable, in part because the total is "grossly disproportionate" to other cases in this jurisdiction. See Doc. 477-2 at 3. Mr. Cassidy declares a "typical fee award for 'fees on fees' in this jurisdiction would approximate $25,000," and given this case is "more complex than most," an appropriate award would be "in the $50,000 range." Id. at 3-4.

The Court, however, is tasked with determining, in its discretion, a reasonable number of hours required to perform the work Plaintiffs' counsel claims for the fee recovery work. The Court is cognizant of the "volume of the work that was done" as it has reviewed the time entries Plaintiffs submitted. Again, the question is whether that volume was reasonably expended. The Court finds that it was not. Accordingly, the Court, in its discretion, reduces the claimed 416 hours for fee recovery work by 20%. See, e.g., Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010) (stating district courts are authorized "to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application") (internal quotation marks and citation omitted). The 3.5 hours requested for remand-related work are awarded in full at $300 per hour for an award of $1,050.

Applying the reasonable rates determined above, yields the following compensation for the remaining 416 hours:

| Name | Hours[7] | Rate | Total |
|---|---|---|---|
| Thomas R. Julin | 109 | $300 | $32,700 |
| Jamie Z. Isani | 111 | $200 | $22,200 |
| Patricia Acosta | 78 | $200 | $15,600 |
| Robert B. Hemley | 30 | $300 | $ 9,000 |
| Matthew B. Byrne | 5 | $300 | $ 1,500 |
|  |  |  | $81,000 |

See Doc. 480-2.

The total award for the hours requested in the supplemental motion is $82,050. Accordingly, the attorneys' fee award for both the original and supplemental motions is $2,137,050.

B.   Expenses

Plaintiffs request an award of expenses, exclusive of expert fees, in the amount of $177,269.81.  See Doc. 466-3 at 94 (Julin Decl. Ex. 6 at 1) (list of expenses).  Under 42 U.S.C. § 1988, the term "Attorney's fees" includes reasonable litigation expenses; therefore, an award of costs under section 1988 "normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients."  Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation and citation omitted).  "The rationale for this rule is that attorney[s]' fees include expenses that are incidental and necessary to the representation, provided they are reasonable."  Id. (internal quotation and

---

[7] Each timekeepers' hours are rounded down to account for the 3.5 hours of remand-related work awarded at $300 per hour.

citation omitted). Accordingly, "[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead, which must normally be absorbed within the attorney's hourly rate." Kuzma v. I.R.S., 821 F.2d 930, 933-34 (2d Cir. 1987) (citing cases).

Plaintiffs bear the burden of justifying their expenses as reasonable and necessary whether the state addressed the issue or not. Plaintiffs seek $8,033.73 for meals. (Doc. 466-3 at 94.) Plaintiffs provide no authority holding the cost of meals is a reasonable and necessary expense. See Docs. 466 at 24-25; 470 at 10 (citing cases approving such items as computer research, photocopying, travel, and telephone costs). The Court is aware the cost of meals was billed to Plaintiffs, but does not see such a cost as necessary where attorneys must eat whether litigating this case or not. Accordingly, the Court excludes $8,033.73 from the award.

Plaintiffs seek $2,917.98 for publication costs. (Doc. 466-3 at 94.) Plaintiffs' expense detail for publications shows the majority of the expense was the purchase of books and articles. (Doc. 466-3 at 134-35, 153-55 (Julin Decl. Ex. 7 at 40-41, 59-61).) The expense detail further shows at least three examples of multiple entries for the same item. Id. at 134-35. Plaintiffs have not demonstrated these publications were not otherwise unavailable. See Kuzma, 821 F.2d at 933 (affirming district court's exclusion of "cost of law books readily available in libraries"). The Court finds these expenses were not reasonably incurred. The publication expenses also include $866.70 for "Trial Boards 30x42." (Doc. 466-3 at 135.) This expense is also not recoverable. "Courts in this Circuit generally decline to award costs for . . . exhibit-related supplies, as they are part of general office overhead and thus already compensated for through attorneys' fees." Tatum, 2010 WL 334975, at 13 (citing cases). Accordingly, the Court excludes $2,917.98 from the award.

Plaintiffs seek $14,005.79 for litigation support expenses. (Doc. 466-3 at 94.) These expenses largely consist of photocopying and scanning costs which are recoverable. See Doc. 466-3 at 127-33. The request also includes an expense of $3,944.90 for rental of a copier and printer for trial. Id. at 133. While the Court does not doubt a private copier and printer available while litigating a trial is convenient, the Court does not find it reasonable or necessary. Accordingly, the Court excludes $3,944.90 from the award.

Plaintiffs seek $14,022.15 for courier expenses. (Doc. 466-3 at 94.) The Court finds the use of private couriers excessive where less expensive alternatives exist. As with the copier, couriers may be more convenient but Plaintiffs have not shown them to be reasonable or necessary. The use of couriers is a luxury that is more akin to nonrecoverable routine office overhead, which should be absorbed within the attorney's hourly rate. Accordingly, the Court, in its discretion, reduces the requested expenses for couriers by half and awards $7,011.08.

Plaintiffs seek $23,255.06 for legislative research and transcription expenses. (Doc. 466-3 at 94.) These expenses are not for court reporter and transcript costs normally recoverable under 28 U.S.C. § 1920; Plaintiffs had audio tapes of legislative history transcribed. Though Plaintiffs were reimbursed over $12,000 by PhRMA, an expense of over $20,000 is excessive in the Court's view. Accordingly, the Court, in its discretion, reduces the requested amount for these expenses by half and awards $11,627.53.

Plaintiffs seek $73,489.95 for travel-related expenses. (Doc. 466-3 at 94.) These expenses are impressive given Plaintiffs' use of local counsel for Vermont depositions to minimize travel costs (Doc. 466 at 5) and Plaintiffs' counsels' east coast locations. The Court refuses to conduct a line by line survey of the expense detail, however, an entry for $1,995.31 for one attorney's airfare, hotel, taxis, and parking for a one night trip to watch oral argument is a clear example of excess. See Doc. 466-3 at 151. Other entries are so devoid of detail the Court is unable to ascertain

whether the expense is reasonable.  See id. at 154-55.  Further, there are entries in this category of expenses for meals which the Court has disallowed above.  See id. at 156.  For these reasons, the Court, in its discretion, reduces the requested expenses for travel by half and awards $36,744.98.

The Court finds expenses incurred for computer research in the amount of $40,873.08, postage in the amount of $119.82, and telephone charges in the amount of $552.25 are reasonable in the context of this litigation.  Plaintiffs are awarded these costs.

Accordingly, Plaintiffs are awarded $106,989.63 for other expenses reasonably and necessarily incurred.

    C.    Costs

Plaintiffs request an award of costs in the amount of $104,522.48.  The Clerk of Court is directed to review Plaintiffs' request for costs and supporting documentation, including their Bill of Costs (Doc. 468), and award costs as authorized under 28 U.S.C. § 1920.  Accordingly, the Court declines to award costs at this time.

III.    Conclusion

In conclusion, the Court determines a presumptively reasonable attorneys' fee in this case is $2,055,000 for the fees requested in the original motion, calculated by multiplying a reasonable hourly rate of $300 by the reasonably expended hours of 6,850, and $82,050 for the fees requested in the supplemental motion, calculated by multiplying a reasonable Vermont rate of $300 for experienced partners and $200 for senior associates respectively by the reasonably expended hours of 416, plus $1,050 for remand-related work, calculated by multiplying a reasonable hourly rate of $300 by the reasonably expended hours of 3.5, for a total fees award of $2,137,050.  Expenses in the amount of $106,989.63 are awarded.  The Clerk of Court will determine the appropriate award of costs.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 17th day of July, 2012.

                                              /s/ J. Garvan Murtha
                                              Honorable J. Garvan Murtha
                                              United States District Judge